1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   UNITED STATES OF AMERICA,

10            Plaintiff,                          No. CR 05-0167 WHA

11      v.

12   EDGAR DIAZ, RICKEY ROLLINS,           **ORDER DENYING**
     DON JOHNSON, ROBERT CALLOWAY,         **DEFENDANT FORT'S**
13   DORNELL ELLIS, EMILE FORT,            **MOTION TO SUPPRESS**
     CHRISTOPHER BYES, PARIS               **EVIDENCE OBTAINED AS A**
14   RAGLAND, RONNIE CALLOWAY,             **RESULT OF MARCH 2004**
     ALLEN CALLOWAY, and REDACTED          **ARREST.**
15   DEFENDANTS NOS. ONE & TWO,            **(Doc. No. 589**)

16            Defendants.

17   _____/

18                            **INTRODUCTION**

19            In this criminal RICO prosecution, defendant Emile Fort moves to suppress police

20   observations and a cell phone search from his arrest on March 20, 2004.  An evidentiary hearing

21   was held on October 25, 2006, and on October 27, 2006, during which defendant Fort and

22   three officers involved in the arrest testified.  The officers were San Francisco Police Officers

23   Kevin Knoble, Michael Murphy, and Dan Gibbs.  For the reasons below, defendant Fort's

24   motion is **DENIED**.

25                            **STATEMENT**

26            The following are the Court's findings following an evidentiary hearing.

27   On March 20, 2004, defendant Fort was approached by Officer Knoble and Officer Gibbs.

28   Before that day, Officer Knoble had interacted with defendant Fort at least twice previously.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   At the time, defendant Fort was on probation following a misdemeanor drug offense.

2   Officer Knoble knew that Fort had a prior conviction and believed that Fort's probation

3   included a search condition.  Officer Knoble asked defendant Fort for his identification.

4   Defendant Fort handed Officer Knoble a California driver's license that Officer Knoble

5   assumed was valid.  Officer Knoble conducted a pat-down search, and subsequently released

6   Fort.  After being released, defendant Fort drove away in a gray Cadillac.

7        The parties agree on the foregoing.  They disagree on certain details.  Defendant Fort

8   testified that he was driving when Officer Knoble pulled him over.  Officer Knoble testified that

9   defendant Fort was standing next to his car at the time of the stop.  This is a point of little

10   consequence, at most a difference of recollection.

11        Officer Knoble testified and the Court finds that he recognized Fort before the stop, and

12   knew Fort was associated with the Down Below Gang.  This order rejects defendant's argument

13   that Knoble made a random stop without recognizing defendant Fort at all.  Soon after the initial

14   encounter, Officer Knoble conducted a computer query on defendant Fort.  It revealed an

15   outstanding warrant for defendant Fort's arrest for driving with a suspended license.  It also

16   revealed that Fort did not have a valid driver's license.  Officer Knoble radioed other officers in

17   the neighborhood and requested a stop of defendant Fort.  Officer Knoble and Officer Gibbs

18   then saw defendant Fort driving down the street and began to pursue him in their car.

19   Defendant Fort, however, took evasive action, having correctly concluded that the police had

20   discovered that his driver's license was suspended.  Approximately ten minutes after the initial

21   encounter, defendant Fort parked the car a few blocks away from the site of the first interaction.

22   He and his two companions, Don Johnson and Jason Williams, started walking.

23   Officer Murphy, responding to the radio communication, saw the three men walking nearby.

24   He stopped them.  Officer Murphy then alerted Officer Knoble that he had detained defendant

25   Fort.  The officers arrested defendant Fort based upon the outstanding warrant and transported

26   him to Ingleside station.  All of this happened within a short period of time.

27        At the station, defendant Fort was booked.  During the booking search, officers

28   discovered small amounts of marijuana and crack cocaine.  Officer Murphy collected Fort's

1  personal belongings, including a cell phone.  Officer Murphy turned on defendant Fort's cell

2  phone and wrote down some of the information contained on the phone.  He recorded the initial

3  messages that appeared when the phone was turned on, and the names and phone numbers in

4  the address book.  Officer Murphy did this during the booking process because of a concern that

5  the battery would later die, precluding access to the information if a charger for this type of

6  phone was unavailable.  Defendant Fort now moves to suppress police observations and the

7  phone search of March 20, 2004.

**ANALYSIS**

8

9     **1.     THE OFFICERS VIOLATED DEFENDANT FORT'S**
            **FOURTH AMENDMENT RIGHTS BY SEARCHING HIM**
10           **WITHOUT REASONABLE SUSPICION THAT HE WAS**
            **ENGAGED IN CRIMINAL ACTIVITY.**

11

12          Searches of probationers with search conditions must comply with the requirements of

13  *United States v. Knights*, 534 U.S. 112, 122 (2001).  Under *Knights,* a "warrantless search of

14  [a defendant], supported by reasonable suspicion and authorized by a condition of probation,

15  [is] reasonable."  Because probation is a form of criminal sanction, the probationer's reasonable

16  expectation of privacy is diminished.  The state also has an important governmental interest in

17  preventing violations of law, and there is a concern that persons on probation are more likely to

18  commit crimes.  Accordingly, this degree of individualized suspicion justifies the intrusion on

19  the probationer's privacy.  *Id*. at 119–22; *Moreno v. Baca*, 431 F.3d 633, 637 (9th Cir. 2005).

20          The government relies on *Samson v. California*, 126 S. Ct. 2193, 2196 (2006), for the

21  proposition that the search of a probationer no longer requires any particularized suspicion.

22  In *Samson*, the Supreme Court held that a suspicionless search of a *parolee* with a search

23  condition does not violate the Fourth Amendment because a parolee does not have legitimate

24  privacy expectations and because the state has a substantial interest in closely supervising

25  parolees.  While the Supreme Court did not reach the issue of whether a suspicionless search of

26  a *probationer* violates the Fourth Amendment, its discussion about the 'continuum' of rights for

27  parolees versus probationers is important to the instant case.  Parolees and probationers are not

28  treated the same in evaluating a Fourth Amendment suspicionless search.  "On this continuum,

    parolees have fewer expectations of privacy than probationers, because parole is more akin to

imprisonment than probation is to imprisonment." *Id*. at 2197. The Supreme Court's holding only approved of suspicionless searches for parolees, not probationers.

Here, Officer Knoble did not have reasonable suspicion that defendant Fort was engaged in any criminal activity. The officer testified that he approached Fort in order "to see what was going on" and asked for his identification for two reasons: (1) to create a connection between them and (2) to decrease the likelihood of defendant fleeing. Officer Knoble then performed a pat-down search on defendant Fort. Officer Knoble did not know of any potential criminal activity when he stopped defendant Fort. Consequently, his search of defendant Fort was illegal, and any evidence derived from his initial encounter with defendant Fort would have to be suppressed. There was, however, no evidence obtained at this first encounter.

### 2. THE SUBSEQUENT ARREST WAS SUFFICIENTLY ATTENUATED AND THERE WAS AN INDEPENDENT SOURCE OF INFORMATION; SUPPRESSION OF THE EVIDENCE IS NOT REQUIRED.

The next question "is whether, granting establishment of the primary illegality, the evidence to which [the] instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). Under the "fruit of the poisonous tree" rule, if the arrest by Officer Murphy was tainted by Officer Knoble's initial stop, suppression of the cell phone list would be required. Two relevant exceptions, however, counsel against finding that the first stop tainted the second stop: (1) attenuation and (2) the independent source exception. This order finds that both theories militate against applying the exclusionary rule here.

The doctrine of attenuation may dissipate any taint. *Nardone v. United States*, 308 U.S. 338, 341 (1939). "[E]vidence is not to be excluded if the connection between the illegal police conduct and the discovery and seizure of the evidence is so attenuated as to dissipate the taint." *Segura v. United States*, 468 U.S. 796, 805 (1984) (internal citations omitted). The Supreme Court focused on attenuation in *Wong Sun*. There, the defendant had been released after the initial arrest, and subsequently returned voluntarily several days later when he made a statement

1    to the police.  The Supreme Court held that this intervening period dissipated the underlying

2    taint from the initial illegal search and arrest.

3          Here, Officer Knoble released defendant Fort after their first encounter.  After being

4    released, defendant Fort subsequently violated the law again by driving with a suspended

5    license — the same violation for which he had an outstanding warrant — and was again seen by

6    the police.  Because defendant Fort had been released and voluntarily committed a subsequent

7    violation, Officer Murphy's detainment and arrest of defendant Fort were sufficiently attenuated

8    from the initial stop to find that the taint had been dissipated.  *Wong Sun*, 371 U.S. at 491–92.

9    Because the "chain of causation proceeding from the unlawful conduct has become so

10    attenuated or has been interrupted by some intervening circumstance so as to remove the taint

11    imposed upon that evidence by the original illegality," the evidence obtained as a result of the

12    second stop and arrest need not be suppressed.  *United States v. Crews*, 445 U.S. 463, 471

13    (1980).

14          "Attenuation can occur, of course, when the causal connection is remote.

15    Attenuation also occurs when, even given a direct causal connection, the interest protected by

16    the constitutional guarantee that has been violated would not be served by suppression of the

17    evidence obtained."  *Hudson v. Michigan*, 126 S. Ct. 2159, 2164 (2006).  Here, Officer Knoble

18    did not make defendant Fort wait while he searched him on the computer.  He asked defendant

19    Fort for his identification, performed an illegal although minimally intrusive search, and

20    released him.  Officer Knoble did not learn that defendant Fort was driving with a suspended

21    license nor did he discover the drugs on defendant Fort's person.  The purpose of the illegal

22    stop was not to harass defendant Fort.  Furthermore, the Supreme Court has recently cautioned

23    that "[s]uppression of evidence, however, has always been our last resort, not our first impulse."

24    *Id*. at 2163.  The connection between the first encounter and the subsequent arrest was not

25    sufficiently intertwined so as to require suppression of the evidence, and the constitutional

26    purpose behind suppression here would not be served.

27          Under the independent source doctrine, the exclusionary rule should not be applied

28    where evidence was discovered from an independent source, and not from the illegal actions.

1  *United States v. Ceccolini*, 435 U.S. 268, 274 (U.S. 1978)*; Silverthorne Lumber Co. v.*

2  *United States*, 251 U.S. 385, 392 (1920).  "To be untainted by this prior search, the officers'

3  decision to seek the warrant must not have been prompted by what they had seen during [the

4  earlier unlawful search].  In particular, the district court must explicitly find that the agents

5  would have sought a warrant if they had not earlier entered [defendant's house]."

6  *United States v. Hill*, 55 F.3d 479, 481 (9th Cir. 1995).

7         Here, the outstanding warrant the officers were enforcing was not prompted by the

8  illegal search.  The officers did not learn any significant information as a result of the unlawful

9  stop and search.  *Pulliam*, 405 F.3d 782, 787 (9th Cir. 2005).  As found above, the officer saw

10  and recognized defendant Fort *before* they approached him.  This order finds that the officers

11  would have performed the same computer check on defendant Fort had they not stopped and

12  searched him.  Officer Knoble knew defendant Fort from other encounters in the neighborhood.

13  There is nothing improper about an officer seeing a known individual in public and running a

14  check on that person to determine if that person has any outstanding warrants.  A visual sighting

15  of defendant Fort — without any illegal interaction — would likely have instigated the

16  computer query performed by Officer Knoble because Officer Knoble knew defendant Fort

17  from at least two previous interactions.  Even though this computer search was done after the

18  initial stop, the second stop was not derivative of the initial illegality.  *Id*. at 785.  "[H]ere the

19  information actually used to" run the computer check on defendant Fort "was independent of"

20  the illegal search.  Accordingly, "there is no reason to suppress the evidence" tainted by the

21  unlawful conduct because no evidence derived from the illegal stop.  *United States v. Miller*,

22  822 F.2d 828, 831 (9th Cir. 1987) (internal citations omitted).  Officer Knoble's illegal search

23  of defendant Fort cannot compel suppression of the evidence here because the officers had an

24  independent source for their decision to arrest Fort on his outstanding warrant.  The officers

25  knew who defendant Fort was before they stopped him.  That was their independence source for

26  arresting him later.

27

28

**United States District Court**
For the Northern District of California

### 3.     THE SEARCH OF THE CELL PHONE WAS LAWFUL.

The search of defendant Fort's cell phone was lawful because it was searched incident to his booking at Ingleside station and because, at all events, it was authorized under his probationary search condition.

Collecting defendant Fort's belongings at the station during the booking process did not violate defendant Fort's Fourth Amendment rights. Searches during the booking process are "incidental administrative steps" and do not violate the Fourth Amendment's preclusion against warrantless searches and seizures. *Illinois v. Lafayette*, 462 U.S. 640, 644 (1983). This Fourth Amendment exception "permits warrantless searches incident to custodial arrests, and has traditionally been justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime when a person is taken into official custody and lawfully detained." *United States v. Edwards*, 415 U.S. 800, 802–03 (1974) (citing *United States v. Robinson*, 414 U.S. 218 (1973); *Chimel v. California*, 395 U.S. 752, 755 (1969); *Weeks v. United States*, 232 U.S. 383, 392 (1914)).

Even if the officers did not have the authority to search defendant's cell phone incident to booking, the cell phone search was additionally justified under defendant Fort's probationary search condition. When "an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Knights*, 534 U.S. at 121–22.

When the officers were booking defendant Fort, they discovered small amounts of marijuana and crack cocaine concealed in his clothing. This discovery constituted sufficient reasonable suspicion that defendant Fort was involved in buying or selling drugs for the officers to perform a warrantless search of defendant's cell phone. This alone was sufficient basis for the search of the cell phone. Whether incident to booking, or under the probationary search condition, the search of the cell phone was lawful.

Defendant Fort argues that the phone was not, in fact, searched at the time of his booking. If the phone was not searched incident to booking, a valid warrant is required because

United States District Court

For the Northern District of California

1    "subsequent warrantless searches of the property are invalid." *United States v. Holzman*,

2    871 F.2d 1496, 1505 (9th Cir. 1989).

3          He argues that the phone could not have been searched during his booking based on

4    inference, not direct observation. *First*, he could not see Officer Murphy recording the names

5    in his address book at the time of his booking. *Second*, he saw Officer Murphy seal an envelope

6    containing his belongings with tape. *Third*, he ultimately received his personal belongings back

7    at the end of his incarceration in what he believed was a different envelope.

8          Officer Murphy's testimony was credible, however, that he searched the phone at the

9    time defendant Fort was booked. Accordingly, the search of the cell phone incident to the

10   booking process was a legal search of his belongings. An electronic address book, such as the

11   one contained in defendant Fort's cellular phone, is in essence the same as a physical address

12   book. The search of address books has been accepted by the Ninth Circuit as valid incident to

13   arrest. *Holzman*, 871 F.2d at 1505. While this case does not involve a search incident to arrest,

14   both searches incident to booking and searches pursuant to probationary search conditions are

15   well-recognized exceptions to the Fourth Amendment. Moreover, the search of a cell phone is

16   further justified because of the limited life of a cell phone's battery, which could block access to

17   the information later.

18         Because this order finds the search was lawful incident to both the booking and under

19   defendant Fort's probationary search condition, it does not reach the issue of whether this

20   search was justified under the exigent circumstances of the phone's battery life.

21                                   **CONCLUSION**

22         For the reasons stated above, defendant Fort's motion to suppress evidence derived from

23   the March 2004 arrest is **DENIED**. Defendant Don Johnson has joined in this motion to

24   suppress. For the same reasons as indicated in this order, defendant Johnson's claims are also

25   denied.

26         **IT IS SO ORDERED.**

27   Dated: November 2, 2006.

28                                          _____
                                           WILLIAM ALSUP
                                           UNITED STATES DISTRICT JUDGE