IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

EMILE FORT,

    Defendant.

No. CR 05-0167 WHA

**ORDER RE DENIAL OF TRIAL CONTINUANCE MOTIONS**

      This order explains why trial continuance motions heard this week were denied and why the trial will commence on Monday of next week as scheduled. This prosecution began in 2005. The case was set for trial in November 2008 after an earlier trial date was continued. In October 2008, defense counsel for Emile Fort stated that a recent plea by a co-defendant upset his trial strategy and so more time was required to allow an adjustment. This was granted. Counsel were asked to meet and confer and to prepare a new schedule consistent with the general time-frame that had already been cleared with a large pool of prospective jurors (all having previously been cleared with the blessings of counsel). Defense counsel and government counsel proposed a new trial start date of February 23, 2009. Both sides represented to the Court that this would allow for both phases of the trial and deliberations with two to three weeks of cushion and still be within the time-frame cleared with the venire. Counsels' thought was that the entire case would be over by mid-June but, to be safe, we would

ask the jury to commit to a July 2 outside limit. The Court accepted the new proposed schedule. In November and December, the jury was selected: twelve main jurors and six alternates, all subject to being sworn on the first day of trial. This took many weeks of individual voir dire for "death qualifying" the jury. The jury was promised by counsel and the Court that the trial would start on February 23 and would end by July 2, 2009.

A few days before the trial date, defense counsel filed a late Rule 12.2 notice. It noticed three penalty-phase experts and, more to the immediate point, three *guilt* phase experts, the latter ones aimed at supporting an "imperfect self-defense" theory. Under Rule 12.2, any such notice was due last October. The government has not challenged the timeliness, however, and instead has sought a trial continuance. This motion was heard Wednesday and Thursday of this week. The government asked for a month continuance to obtain counter-experts and to bring *Daubert* motions, all directed at the newly noticed defense experts. The government argued that the month could be accommodated within the July 2 end-of-trial deadline given to the eighteen-person jury. On Wednesday, the Court announced a tentative decision denying the continuance, observing that, while there was some cushion built into the schedule, we did not have the luxury of subtracting a month of trial time when we were contemplating adding more witnesses (rather than fewer). On Thursday, while still urging a continuance, the government reversed field. It proposed to cancel and to discharge the 18-person jury and to set a new, much later, trial date after all *Daubert* proceedings and, in connection with the new date, go through a completely new jury selection. This time, the government argued, inconsistently from the day before, that the existing February 23 to July 2 window will be too short to accommodate the new potential experts and counter-experts.

The Court rejected this reasoning. While we do not have the luxury of subtracting a month of trial time from the case, we do have the ability to try even an expanded case within the February 23 and July 2 window. When that time frame was proposed by counsel and accepted by the Court, some cushion was included for unexpected developments. The Rule 12.2 notice is one such development. It can be and will be accommodated within the cushion already included.

The idea of canceling the trial date and discharging eighteen jurors already selected was also rejected. Many weeks of jury selection were consumed last November and December in selecting the eighteen. Each was individually voir dired in the "death-qualification" process required for capital cases. Many dozen more were individually interviewed by counsel and the Court as prospective jurors but ultimately not selected. A defense juror consultant paid by CJA dollars was present every day of jury selection. And, the eighteen selected have adjusted their lives and calendars to make the sacrifice needed to decide this case. To toss aside all of this commitment and investment of resources and to start all over should only be done for a compelling reason. Counsel have not come even close to providing such a compelling reason.

As to *Dauber*t and the legality of the new defense, we will craft a schedule of hearings that will occur in the afternoons after the jury has gone home for the day. The government's case in chief will last six weeks. Before the defense case begins, we will have sorted out the *Daubert* issues. This will be done without losing jury trial time needed to have the government's case in chief. The government's rebuttal experts would be presented in rebuttal, *i.e.*, *after* the defense experts. The government has vast resources at its disposal. It may have to call upon those resources to meet the new issues — but it can be done. Certainly, the government has not shown that it cannot be done. For the foregoing reasons, the government's continuance motion was denied at the conclusion of the Thursday hearing.

The defense did not oppose the government's motion and, indeed, supported it. For the reasons stated above, however, it would be an enormous waste of large resources to grant the motion and so it ought to be and is denied even if both sides prefer it.

At the Thursday session, when the Court pointed out that the defense had made no continuance motion of its own, the defense then made a verbal motion and at the request of defense counsel, the government excused itself from the room while the arguments therefor were stated. The grounds given were thin. Basically, they amounted to saying little more than good trial lawyers and their experts can always use more time to prepare. The defense motion was totally unsupported by any record. The Court denied the defense motion (without prejudice to any later timely motion supported by a proper and cogent record).

3

1   Last October, the Court granted the defense a long continuance on the eve of the earlier
2   trial date and acquiesced in the very start date — February 23, 2009 — that counsel wished for
3   the new opening of the trial evidence.  This extension was generous.  Vast resources have now
4   been invested in the very schedule devised by all counsel and it should be scrapped, if ever,
5   only for the most compelling of reasons.

6   Finally, with respect to the opening statements, defense counsel are free to describe the
7   Rule 12.2 expert witnesses if they wish but the defense knows that there is a possibility that
8   *Daubert* proceedings will restrict some or all of the testimony.  If defense counsel prefers, as
9   already stated, the Court will allow a second opening before the defense case, by which point
10  the government's objections will be sorted out.  In that event, initial openings would avoid
11  reference to the experts (but still allow for general descriptions of self-defense themes).  This is
12  a choice defense counsel are free to make but please advise the Court before the openings begin
13  on Monday.  Every trial involves hundreds of evidence rulings made as the trial unfolds and are
14  as yet in play when the openings occur.  All openings in all trials must be adjusted so as to
15  accommodate the vicissitudes of such subsequent rulings.  The excellent trial counsel here
16  involved are completely capable of adjusting their openings to accommodate the range of
17  outcomes and possible restrictions on the Rule 12.2 experts.

19  **IT IS SO ORDERED.**

21  Dated:  February 20, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4